Brian J. Lawler SBN 221488
**PILOT LAW, P.C.**
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: (619) 255-2398

Email: blawler@pilotlawcorp.com

Gene J. Stonebarger, SBN 209461
**STONEBARGER LAW, APC**
101 Parkshore Dr., Suite 100
Folsom, CA 95630
Tel: 916-235-7140

Email: gstonebarger@stonebargerlaw.com

Kevin L. Wilson (*pro hac vice pending*)
**KEVIN WILSON LAW PLLC**
3110 Horton Avenue
Louisville, KY 40220
Tel: 502-276-5050
Email: kevin@klwilsonlaw.com

*Counsel for Plaintiffs and the Proposed Putative Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CRAIG, an individual, JULIUS GUAY, an individual, JOHN RUSSO, an individual, JOSEPH VIGUERAS, an individual, on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity, and LOS ANGELES POLICE DEPARTMENT, a municipal entity,<br><br>         Defendants. | Case No.: 2:23-cv-06581<br><br>**COMPLAINT FOR DAMAGES**<br><br>**VIOLATIONS OF 38 U.S.C. §4301 *ET SEQ.***<br><br>**FILING FEE WAIVED PER 38 U.S.C. § 4323(h)**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs DAVID CRAIG, JULIUS GUAY, JOHN RUSSO, and JOSEPH VIGUERAS ("Plaintiffs"), on behalf of themselves and all other similarly situated, hereby complain against Defendants CITY OF LOS ANGELES and LOS ANGELES POLICE DEPARTMENT, as follows:

## I.    NATURE OF THE ACTION

1.    This is a civil action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 *et. seq.* ("USERRA"). It is brought by Plaintiffs on behalf of themselves and a nationwide Class of all persons similarly situated, including current and former employees of the City of Los Angeles Police Department who were or are currently serving in the reserve component of the United States Armed Forces and National Guard.

## II.    PARTIES

### A.    Plaintiff David Craig

2.    Plaintiff David Craig ("Plaintiff Craig") is a citizen of the United States and a resident of Idaho.

3.    Plaintiff Craig was employed by Defendant and retired as a Police Lieutenant II in the Los Angeles Police Department. At all times relevant, Plaintiff Craig worked for Defendant in Los Angeles, California.

4.    At all times relevant, Plaintiff Craig served as a commissioned officer in the California Army National Guard ("CA-ARNG").

5.    During the relevant times referenced herein, Plaintiff Craig was a qualified employee and member of the uniformed services as defined by 38 U.S.C. §4303(3) and (16).

### B.    Plaintiff Julius Guay

6.    Plaintiff Julius Guay ("Plaintiff Guay") is a citizen of the United States and

a resident of the State of California.

7.    Plaintiff Guay was employed by Defendant and retired as a Police Lieutenant II in the Los Angeles Police Department. At all times relevant, Plaintiff Guay worked for Defendant in Los Angeles, California.

8.    At all times relevant, Plaintiff Guay served as a commissioned officer in the USAR.

9.    During the relevant times referenced herein, Plaintiff Guay was a qualified employee and member of the uniformed services as defined by 38 U.S.C. §4303(3) and (16).

**C.    Plaintiff John Russo**

10.    Plaintiff John A. Russo (Plaintiff Russo) is a citizen of the United States and a resident of the state of California.

11.    Plaintiff Russo was employed by Defendant and retired as a Police Lieutenant II in the Los Angeles Police Department.  At all times relevant, Plaintiff Russo worked for Defendant in Los Angeles, California.

12.    At all times relevant, Plaintiff Russo served as a member of the United States Marine Corps Reserve ("USMCR") and subsequently the United States Coast Guard Reserve ("USCGR").

13.    During the relevant times referenced herein, Plaintiff Russo was a qualified employee and member of the uniformed services as defined by 38 U.S.C. §4303(3) and (16).

**D.    Plaintiff Joseph Vigueras**

14.    Plaintiff Joseph Vigueras ("Plaintiff Vigueras") is a citizen of the United States and a resident of the state of California.

15.    Plaintiff Vigueras was employed by Defendant and retired as a Police

Lieutenant I in the Los Angeles Police Department. At all times relevant, Plaintiff Vigueras worked for Defendant in Los Angeles, California.

16.    At all times relevant, Plaintiff Vigueras served as a member of the USAR.

17.    During the relevant times reference herein, Plaintiff Vigueras was a qualified employee and member of the uniformed services as defined by 28 U.S.C. §4303(3) and (16).

### E.    Defendants, the City of Los Angeles, and the Los Angeles Police Department

18.    Plaintiffs are informed, believe, and allege that Defendant CITY OF LOS ANGELES ("COLA") is a municipal entity duly organized and existing under the Constitution and laws of the State of California and exercises authority in this judicial district. At all times relevant, COLA is and was an employer for purposes of 38 U.S.C. § 4303(4)(A) and § 4323(i).

19.    Plaintiffs are informed, believe, and allege that Defendant LOS ANGELES POLICE DEPARTMENT ("LAPD") is a municipal entity and an agency of Defendant CITY OF LOS ANGELES and exercises authority in this judicial district. At all times relevant, the LAPD is and was an employer for purposes of 38 U.S.C. § 4303(4)(A) and § 4323(i).

20.    Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees/agents of Defendants, or any of them herein, such individuals at all times acted on behalf of Defendants named in this action within the scope of their respective employments and agencies.

21.    Whenever and wherever reference is made in this Complaint to any conduct of Defendants, or any of them, such allegations or references shall also be deemed to mean the conduct of each Defendant, acting individually, jointly and severally.

22.    At all times relevant to this Complaint, Defendants were the agents and employees of their co-Defendants, and in doing the things alleged in this Complaint were acting within the course and scope of that agency and employment.

23.    Plaintiffs do not seek any category of relief greater than or different from the relief sought for the Class of which Plaintiffs are members. This action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or non-pecuniary, on a large class of persons. Private enforcement is necessary and individual prosecution places a disproportionate financial burden on Plaintiffs in relation to Plaintiffs' stake in the matter.

## III.    JURISDICTION AND VENUE

24.    The jurisdiction of this court is founded on federal question jurisdiction, 28 U.S.C. §1331, as conferred by 38 U.S.C. §4323(b)(3).

25.    Venue is proper because Defendant LAPD is a municipal entity and an agency of Defendant COLA, exercising authority in this judicial district, as provided in 38 U.S.C. §4323(c)(1) and 28 U.S.C. §1391(b).

26.    Pursuant to 38 U.S.C. § 4323(h), "No fees or court costs may be charged or taxed against any person claiming rights under [USERRA]".

## IV.    GENERAL ALLEGATIONS

27.    LAPD has policies and practices of denying benefits of employment to its employees, including Plaintiffs and the Class, because of their military service obligations, in violation of USERRA. These violations include, but are not limited to:

    A. Allowing vacation and sick time to accrue for employees on paid military leave but not for employees on comparable, unpaid military leave;

    B. Providing differential pay to employees on military leave who perform

certain types of military service, while denying differential pay to employees who performed other types of military service;

C. Limiting the amount of paid military leave to 174 hours, in violation of the California Military and Veterans Code Section 395.02[1];

D. Reducing the number of credit hours converted from days to less than eight (8) hours per day for military leave only, while allowing eight (8) credit hours per days for other comparable forms of non-military leave;

E. Requiring employees to submit three (3) copies of military orders to LAPD before military leave will be "approved";

F. Requiring employees to complete an Employee Report Form 15.7 before military leave will be "approved";

G. Requiring employees to complete a Military Leave Notification Form (LAPD Form 1.36.05) to the Military Liaison before military leave will be "approved";

H. Requiring employees to submit DD-214 forms to LAPD upon completion of military leave;

I. Requiring employees to undergo psychological testing upon completion of military leave; but not for other employees returning from other forms of leave; and

J. Denying promotions to military servicemember employees who perform military service obligations.

**A.    Discrimination Against Plaintiff Craig Based on Military Status**

28.    Plaintiff Craig enlisted in the United States Air Force Reserve (USAFR) in 1991, serving three years before transferring to the CA-ARNG in 1994, and then

---

[1] Plaintiffs will timely amend this Complaint to allege violations of the CA MVC after complying with applicable government claims process requirements.

receiving a commission to the rank of Second Lieutenant in 1996.

29.    Plaintiff Craig began his employment with the LAPD as a sworn officer in January of 1995 as a Police Officer I. Throughout his twenty-eight-year career with the LAPD, he progressed through the ranks up to the rank of Police Lieutenant II.

30.    In 2006, Plaintiff Craig was promoted to the position of Police Detective I, wherein he was hand-picked to conduct complex investigations into homicides, robberies, and other high-profile crimes in the 77th Criminal Gang Homicide Group and Southeast Patrol Divisions.

31.    As a Police Sergeant I, Plaintiff Craig worked as a Patrol Supervisor in West Los Angeles and 77th Patrol Division. Subsequently, he was selected to the Operations South Bureau as the Special Events Coordinator, wherein he was responsible for planning police response to large-scale public events, such as football games, public demonstrations, parades, and other unusual occurrences.

32.    As a Police Sergeant II, Plaintiff Craig worked in the Gang and Narcotics Division as the Narco Administrative Supervisor and the Gun Unit Supervisor.

33.    As a Police Lieutenant I, Plaintiff Craig worked as the West Valley Patrol Watch Commander. During this time, Plaintiff Craig was tasked to fill in as the Patrol Commanding Officer several times during the absence of the Patrol Commanding Officer.

34.    As a Police Lieutenant II, Plaintiff Craig worked as the Gang Impact Team Officer in Charge in the West Valley Division. Plaintiff Craig's academic accomplishments include a Bachelor of Arts degree in History, an Associates of Science in Aircraft Systems Maintenance, and a Master of Arts degree in Homeland Security (*cum laude*).

35.    Specific to his duties as a law enforcement officer, Plaintiff Craig earned

academic credentials by completing the Basic, Intermediate, Advanced, Supervisory, and Management Certificates from the California Commission on Police Officer Standards and Training (POST). He has also completed the POST Management course, the Intermediate Incident Command System course, the Advanced Command General Staff course, and the Enhanced All Hazards Incident Management Course.

36.    Much of Plaintiff Craig's military experience contributes to his career in law enforcement. For example, when Plaintiff Craig was hand-selected to serve as a Police Advisor to the Kandahar Chief of Police in 2017-2018 while in support of Operation Freedom's Sentinel. In this role, he advised an Afghan General in all facets of Police training and employment.

37.    During Plaintiff Craig's over thirty-two years military career, he has held several key leadership responsibilities, including command of a Field Artillery Battalion composed of over five hundred soldiers which was recognized as the best in the California Army National Guard in the metrics of military readiness and retention. His many accomplishments have been recognized by award of the Combat Action Badge, Bronze Star Medal, Meritorious Service Medal, Army Commendation Medal, Air Force Commendation Medal, Army Achievement Medal, Air Force Achievement Medal, Military Outstanding Volunteer Service Medal, and the California Medal for Merit.

38.    Throughout the entirety of his career with the LAPD, Plaintiff Craig attended monthly inactive duty training periods, or "battle assembly," per his military service obligation with the CA-ARNG. These lasted approximately two-to-four days each, and generally occurred during the weekend. However, some of the battle assemblies would require Plaintiff Craig to take leave from his employment with LAPD during the week to accommodate the CA-ARNG training requirements.

39.    In addition to monthly battle assembly, Plaintiff Craig was generally required to take leave from his employment with LAPD to conduct "annual training" every year. Annual training, or "AT," generally lasted two-to-three weeks, but could be longer depending on the specific training conducted.

40.    Plaintiff Craig also executed long-term active-duty military orders seven times during his employment with LAPD. These mobilizations varied in duration and location, but include months-long deployments to Afghanistan, Iraq, Kosovo, and others in support of domestic mission, such as responses to wildfires, riots, and homeland security matters.

41.    In early 2021, Plaintiff Craig took and passed the written and oral examination for promotion to the rank of Captain I.

42.    On April 28, 2021, the Administrative Services Bureau of the LAPD announced the names and "whole score grades" of the candidates for promotion to the rank of Captain I. Plaintiff Craig was placed in the Rank 4 category, with a "whole score grade" of 80.

43.    The April 28, 2021 list included thirty-nine candidates for promotion to Captain I in the Rank 1, 2 and 3 categories that scored higher than Plaintiff Craig, twenty-eight candidates that scored the same as Plaintiff Craig in the Rank 4 category, and at least six other candidates that scored less than Plaintiff Craig in the Rank 5, and Rank 6 categories.

44.    Upon information and belief, Plaintiff Craig's qualifications for promotion were superior to many of the candidates selected for promotion to Captain I in the LAPD from the April 28, 2021 list. Plaintiff Craig had greater experience, training, education, credentials, and overall performance than several candidates selected for promotion to Captain I.

45.     Despite Plaintiff Craig's qualifications, he was not selected for promotion to Captain I.

46.     Upon information and belief, approximately fifty candidates from the April 28, 2021 list were promoted to the rank of Captain I.

47.     Upon information and belief, none of the candidates selected for promotion to Captain I from the April 28, 2021 list had a current military service obligation.

48.     Upon information and belief, the April 28, 2021 list included at least two other candidates eligible for promotion to the rank of Captain I with current military service obligations, Mr. Eric Quan in the Rank 3 Category, and Mr. Jose Martinez in the Rank 4 category. They were members of the USAR and United States Air Force Reserve (USAFR), respectively.

49.     Upon information and belief, neither Mr. Quan nor Mr. Martinez were selected for promotion by the LAPD to Captain I.

50.     Upon information and belief, LAPD promoted several candidates from the April 28, 2021 list to the rank of Captain I who scored in the Rank 4, Rank 5, and Rank 6 categories.

51.     Plaintiff Craig was not ranked higher on the April 28, 2021 list and not selected for promotion to Captain I because of his continued service with the CA-ARNG. Specifically, that the LAPD unlawfully denied his promotion to Captain I because they did not want an employee in the rank of Captain I who also had a military service obligation and potentially would be required to take military leave.

52.     Believing his continued military service would prevent him from being selected for promotion to Captain I despite his extensive credentials and qualifications for the position, Plaintiff Craig retired from the LAPD as a Police Lieutenant II, effective February 25, 2023.

**B.**    <u>Discrimination Against Plaintiff Guay Based on Military Status</u>

53.    Plaintiff Guay enlisted in the United States Army in 1983. He performed active-duty military service for approximately seven years, then joined the California Army National Guard on an active-duty counter-drug Task Force for the state of California for approximately two years before ultimately joining the United States Army Reserve in 1994.

54.    Plaintiff Guay began his employment with the LAPD as a sworn officer in July of 1993 as a Police Officer I. Throughout his twenty-seven-year career with the LAPD, he progressed through the ranks up to the position of Police Lieutenant II.

55.    As a Police Sergeant I, Plaintiff Guay worked as a supervisor in the Gang Enforcement Detail, a Patrol supervisor in the Wilshire and Southwest Areas, and as an Area and Patrol Adjutant in the Southeast Area, West Los Angeles, and Southwest Areas, and was individually selected to lead a transition team to establish the new Olympic Area Patrol Division.

56.    As a Police Sergeant II, Plaintiff Guay worked as an Aide to the Commander at the Office of Operations, the Officer-in-Charge for the for the 77th Area Community Law Enforcement and Recovery Unit, the Assistant Watch Commander for the Olympic Area, and as the Officer-in-Charge of the Olympic Area Community Relations Office and Senior Lead Office.

57.    As a Police Lieutenant I, Plaintiff Guay worked as a Watch Commander at the Newton Patrol Division and was specifically asked to assume duties as a Watch Commander at the 77th Area due to leadership needs. During this time, Plaintiff Guay was also selected to serve as the Acting Patrol Commanding Officer for both the Newton and 77th Areas.

58.    As a Police Lieutenant II, Plaintiff Guay worked as a Detective

Commanding Officer, an Acting Patrol Commanding Officer, and as the Fugitive Warrant Section Officer-in-Charge. These assignments are generally considered to be "coveted" among Police Lieutenants in the LAPD and only offered to the most qualified candidates.

59.    Plaintiff Guay's academic accomplishments include a Bachelor of Arts degree in Criminal Justice, a Master's degree in Public Administration, and a Doctor of Philosophy degree in Public Safety and Leadership.

60.    Specific to his duties as a law enforcement officer, Plaintiff Guay earned academic credentials by completing the Basic, Intermediate, Advanced, Supervisory, and Management Certificates from the California Commission on Police Officer Standards and Training (POST). He has also completed the POST Management course, POST Command Officer course, the Sherman Block Supervisory Leadership Institute course, the Situational Leadership I and II courses, and the Federal Bureau of Investigation's National Academy – which is only offered by the LAPD to highly-qualified leaders.

61.    Throughout the entirety of his career with the LAPD, Plaintiff Guay attended monthly inactive duty training periods, or "battle assembly," per his military service obligation with the USAR. These lasted approximately two-to-four days each, and generally occurred during the weekend. However, some of the battle assemblies would require Plaintiff Guay to take leave from his employment with LAPD during the week to accommodate the USAR training requirements.

62.    In addition to monthly battle assembly, Plaintiff Guay was generally required to take leave from his employment with LAPD to conduct "annual training" every year. Annual training, or "AT," generally lasted two-to-three weeks, but could be longer depending on the specific training conducted.

63.    Plaintiff Guay also executed long-term active-duty military orders five times during his employment with LAPD. These mobilizations varied in duration and location, but include months-long deployments to Afghanistan, Iraq, Columbia, and Europe.

64.    For every military AT and mobilization that Plaintiff Guay executed during his LAPD career, the LAPD required Plaintiff Guay to produce three copies of his official orders before military leave was approved. However, the LAPD would only accept the orders if they were "certified" by another member of the LAPD who was also serving in the military, and held a military rank of E-7 and above or were a commissioned officer. The "certification" process required the other LAPD employee also serving in the military to sign Plaintiff Guay's orders, despite the other employee potentially not being in the same military unit or even the same military service branch as Plaintiff Guay.

65.    The vast majority of Plaintiff Guay's military experience is in law enforcement. In this capacity, Plaintiff Guay led several teams with significant responsibilities. For example: Plaintiff Guay served as a United States Army Criminal Investigation Division (CID) Special Agent – both as an enlisted member and then as an officer; the Officer-in-Charge of the Drug Suppression Team, working with the German police as well as the German federal customs agency to reduce the trafficking and sales of illicit drugs; as the OIC of the Counter-Assault Team, in which he led U.S. service-members trained to operate in high-threat environments and also in dignitary protection; and served on a Close Protection Team for the United States Secretary of Defense and the Chairman of the Joint Chiefs of Staff.

66.    During Plaintiff Guay's over thirty-five years military career, he has successfully commanded five separate units, and held multiple assignments as an

enlisted soldier, warrant officer, and commissioned officer. His performance has been recognized through the award of several military decorations – including the Bronze Star Medal, the Defense Meritorious Service Medal, three Meritorious Service Medals, and three Joint Service Commendation Medals.

67.    The skills Plaintiff Guay developed throughout his military experience significantly contributed to his high level of performance in the LAPD.

68.    Upon information and belief, the minimum requirements for promotion to the position of Captain I in the LAPD is completion of a probationary period as a Police Lieutenant, a valid California driver's license, and meeting certain medical and physical guidelines. Plaintiff Guay met the experiential and pre-requisite requirements for selection to the rank of Captain I.

69.    In 2016, Plaintiff Guay took and passed the written and oral examination for promotion to the rank of Captain I.

70.    On November 21, 2016, the Administrative Services Bureau of the LAPD announced the names and "whole score grades" of the candidates for promotion to the rank of Captain. Plaintiff Guay was the top placement in the Rank 2 category, with a "whole score grade" of 90. There were only four other candidates who scored above him at 91, ten other candidates with the same score of 90, and forty-nine candidates who scored below him in the Rank 3, 4, 5, and 6 categories.

71.    Upon information and belief, twenty-eight of the candidates from the November 21, 2016 list were selected for promotion to Captain I over the following months.

72.    Upon information and belief, Plaintiff Guay's qualifications for promotion were superior to many of the twenty-eight candidates selected for promotion to Captain I in the LAPD from the November 21, 2016 list. Plaintiff Guay had greater experience,

training, education, credentials, and overall performance than several candidates selected for promotion to Captain I.

73.    Despite Plaintiff Guay's qualifications for promotion, he was not selected for promotion to Captain I.

74.    Plaintiff Guay sought out several members of the LAPD command staff to inquire as to why he was not selected for promotion to Captain I. Specifically, Plaintiff Guay contacted the following leaders at the LAPD: Assistant Chiefs Mike Moore and Robert Arcos; Deputy Chiefs Bill Scott, Jon Peters, Dennis Kato, and Debra McCarthy; Commanders Dennis McCarthy, Howard Leslie, and Robert Lopez, and Captains Stephen Carmona, Steve Lurie, and Gerald Woodyard.  None of the persons Plaintiff Guay spoke with identified any negative aspect of his performance while employed with the LAPD. Both Assistant Chief Arcos and Captain Carmona even stated that Plaintiff Guay "was probably the most qualified guy on the list." Upon information and belief, Deputy Chief Dennis Kato awarded Plaintiff Guay the highest score of all eligible candidates for promotion during the 2016 Captain I promotion process.

75.    One of Plaintiff Guay's peers named in the November 21, 2016 list, candidate Steven Embrich, was placed in the Rank 4 category. Upon information and belief, Mr. Embrich served in the USAR while employed at LAPD.

76.    Upon information and belief, Mr. Embrich was selected for promotion to Captain I on the condition that he retire from his military position with the USAR.

77.    Upon information and belief, Mr. Embrich retired from his position with USAR, and was subsequently promoted to the position of Captain I in the LAPD.

78.    Plaintiff Guay was not selected for promotion to Captain I with the LAPD because of his continued military service with the USAR. Specifically, that the LAPD unlawfully denied his promotion to Captain I because they did not want someone in the

rank of Captain who also had a military service obligation, and would be potentially required to take military leave.

79.    In 2019, Plaintiff Guay provided notice to the LAPD that he was mobilizing on active-duty orders with the USAR in Europe.  In response, his supervisor, Captain Stephen Carmona stated that Plaintiff Guay was deploying because he was "mad that he didn't get picked for Captain."

80.    Rather than face the embarrassment and humiliation of not being selected for promotion to Captain I again, despite his extensive credentials and qualifications for the position, Plaintiff Guay chose to retire from the LAPD as a Police Lieutenant II, effective January 31, 2020.

**C.    Discrimination Against Plaintiff Russo Based on Military Status**

81.    Plaintiff Russo enlisted in the United States Marine Corps (USMC) in 1985 and performed approximately four years of active-duty military service. He was recalled from the Individual Ready Reserve to support the Gulf War, and then completed his initial enlistment in 1993. Plaintiff Russo then enlisted in the United State Coast Guard Reserve (USCGR) in 2005, where he has continually served, and currently holds the rank of E-7.

82.    Plaintiff Russo began his employment with the LAPD as a sworn officer in April of 1990 as a Police Officer I. Throughout his thirty-two-year career with the LAPD, he progressed through the ranks up to the position of Police Lieutenant II.

83.    As a Police Sergeant I, Plaintiff Russo served as a Patrol Supervisor for three separate divisions in Los Angeles.

84.    As a Police Sergeant II, Plaintiff Russo served as an Officer-in-Charge in Internal Affairs, a Consent Decree Liaison in the Professional Standards Bureau, and as the Assistant Chief's Aide in the Office of Support Services.

85.    As a Police Lieutenant I, Plaintiff Russo worked as a Watch Commander in the Mission Division and then as the Section Officer-in-Charge in the Security Services Division.

86.    As a Police Lieutenant II, Plaintiff Russo worked as the Adjutant in the Office of Support Services and then as the Adjutant in the Administrative Services Bureau.

87.    Plaintiff Russo's academic accomplishments include an Associate's Degree in History, a Bachelor of Arts degree in History, and he is currently pursuing a Master's degree in History.

88.    Specific to his duties as a law enforcement officer, Plaintiff Russo earned professional law enforcement credentials by completing the Basic, Intermediate, Advanced, Supervisory, and Management Certificates from the California Commission on Police Officer Standards and Training (POST). He has also completed the Department of Homeland Security Advanced Incident Command System course, and the LAPD West Point Leadership Program.

89.    Since July 2005 while employed with the LAPD, Plaintiff Russo attended monthly inactive duty training periods per his military service obligation with the USCGR. These lasted approximately two-to-four days each, and generally occurred during the weekend. However, some of the battle assemblies would require Plaintiff Russo to take leave from his employment with LAPD during the work week to accommodate the USCGR training requirements.

90.    In addition to monthly battle assembly, Plaintiff Russo was generally required to take leave from his employment with LAPD to conduct "annual training" every year. Annual training, or "AT," generally lasted two-to-three weeks, but could be longer depending on the specific training conducted.

91.    Plaintiff Russo also executed long-term active-duty military orders two times during his employment with LAPD. These mobilizations varied in duration and location, but include a deployment to Kuwait, and a mobilization with the Coast Guard Investigative Service in Washington D.C.

92.    In 2020, Plaintiff Russo took and passed the written and oral examination for promotion to the rank of Captain I.

93.    On April 1, 2021, Plaintiff Russo began three-month active-duty military orders in support of the USCGR's response to the Coronavirus Disease 2019 ("COVID-19") pandemic, lasting until June 30, 2021.

94.    On April 28, 2021, the Administrative Services Bureau of the LAPD announced the names and "whole score grades" of the candidates for promotion to the rank of Captain I. Plaintiff Russo was placed in the Rank 3 category, with a "whole score grade" of 81.

95.    The April 28, 2021, list included fifteen candidates for promotion to the rank of Captain I in the Rank 1 and Rank 2 categories that scored higher than Plaintiff Russo, twenty-three candidates that scored the same as Plaintiff Russo in the Rank 3 category, and at least 34 other candidates that scored less than Plaintiff Russo in the Rank 4, Rank 5, and Rank 6 categories.

96.    On May 6, 2021, Police Officer II Dale Tongson, employed by Defendants in the Medical Liaison Section of the Personnel Division, emailed Police Sergeant Susan Mickles requesting verification on the "work status" of Plaintiff Russo. Specifically, Mr. Tongson stated that he was "conducting the medical work status for the Captain [sic] list… I show [Plaintiff Russo] is out on Military Leave… is that correct… does he have a return date?" Sergeant Mickles responded that Plaintiff had no medical restrictions, and that she would obtain Plaintiff Russo's return date from the

Military Liaison Officer.

97.    Upon information and belief, Defendant's Personnel Division would have been aware of Plaintiff Russo's return date because it had a copy of Plaintiff Russo's military orders.

98.    Shortly after Plaintiff Russo completed the three-month military orders in support of the USCGR's response to the COVID-19 pandemic, and returned to his employment with the LAPD in late summer of 2021, Plaintiff Russo received a telephone call from Sergeant II (currently believed to be a Lieutenant I) Leon Tsap, who worked in the LAPD Office of the Chief of State.  Upon information and belief, the Chief of Staff reports directly to the Chief of Police.  During the phone call Sergeant II Tsap asked Plaintiff Russo "do you really want to be a Captain... I thought you were all in with the military."  Plaintiff Russo responded that he did want to be a Captain in the LAPD, otherwise he would not have taken the test.  Feeling dismayed by the question from Sergeant II Tsap, Plaintiff Russo reported the conversation to Police Administrator III Annemarie Sauer, CO, ASB.

99.    Upon information and belief, Plaintiff Russo's qualifications for promotion were superior to many of the candidates selected for promotion to Captain I in the LAPD from April 28, 2021 list. Plaintiff Russo had greater experience, training, education, credentials, and overall performance than several candidates selected for promotion to Captain I.

100.    Despite Plaintiff Russo's qualifications, he was not selected for promotion to Captain.

101.    Upon information and belief, approximately fifty candidates from the April 28, 2021 list were promoted to the rank of Captain I.

102.    Upon information and belief, none of the candidates selected for promotion

to the rank of Captain I from the April 28, 2021 list had a current military service obligation.

103.    Upon information and belief, the April 28, 2021 list included at least two other candidates eligible for promotion to the rank of Captain I with military service obligations, Mr. Eric Quan in the Rank 3 Category, and Mr. Jose Martinez in the Rank 4 category. They were members of the USAR and United States Air Force Reserve (USAFR), respectively.

104.    Upon information and belief, neither Mr. Quan nor Mr. Martinez were selected for promotion by the LAPD to rank of Captain I.

105.    Upon information and belief, LAPD promoted several candidates from the April 28, 2021 list to the rank of Captain I who scored in the Rank 4, Rank 5, and Rank 6 categories.

106.    Plaintiff Russo was not ranked higher on the April 28, 2021 list and not selected for promotion to Captain I with the LAPD because of his continued service with the USCGR. Specifically, that the LAPD unlawfully denied his promotion to Captain I because they did not want an employee in the rank of Captain I who also had a military service obligation and would be potentially required to take military leave.

107.    Believing his continued military service would prevent him from being selected for promotion to Captain I despite his extensive credentials and qualifications for the position, Plaintiff Russo retired from the LAPD as a Police Lieutenant II, effective June 30, 2022.

**D.    Discrimination Against Plaintiff Vigueras Based on Military Status**

108.    Plaintiff Vigueras enlisted in the United States Army in 1980. He performed active-duty military service for approximately eight years, then joined the USAR for two years until 1990. Then, Plaintiff Vigueras spent nine years in the

California Army National Guard, before transitioning back to the USAR, where he served until his retirement in 2012. Shortly after, Plaintiff Vigueras was recalled from retirement, and continued his service in the USAR until his second retirement on August 1, 2022.

109.   Plaintiff Vigueras began his employment with the LAPD as a sworn officer in February of 1995 as a Police Officer I. Throughout his twenty-seven-year career with the LAPD, he progressed through the ranks up to the position of Police Lieutenant I.

110.   As a Police Sergeant I, Plaintiff Vigueras worked as a Patrol Field Supervisor, a Gang Enforcement Detail Supervisor, a Parole Compliance Unit Supervisor, and a Patrol and Area Adjutant.

111.   As a Police Sergeant II, Plaintiff Vigueras worked as an Internal Affairs Investigator.

112.   As a Police Lieutenant I, Plaintiff Vigueras worked as a Patrol Watch Commander, and the Officer-in-Charge for the Operations South Bureau Complaint Unit.

113.   Plaintiff Vigueras' academic accomplishments include a Bachelor of Arts degree in Political Science, a Master's degree in Public Administration, and Graduate Certificates from the Harvard John F. Kennedy School of Government and the University of Pennsylvania Wharton School of Business.

114.   Specific to his duties as a law enforcement officer, Plaintiff Vigueras earned academic credentials by completing the Basic, Intermediate, Advanced, Supervisory, and Management Certificates from the California POST. He has also completed the West Point Leadership Program, and the Sherman Block Supervisory Leadership Institute course.

115.   Throughout the entirety of his career with the LAPD, Plaintiff Vigueras

attended monthly inactive duty training periods, or "battle assembly," per his military service obligation with the USAR. These lasted approximately two-to-four days each, and generally occurred during the weekend. However, some of the battle assemblies would require Plaintiff Vigueras to take leave from his employment with LAPD during the week to accommodate the USAR training requirements.

116.    In addition to monthly battle assembly, Plaintiff Vigueras was generally required to take leave from his employment with LAPD to conduct "annual training" every year. Annual training, or "AT," generally lasted two-to-three weeks, but could be longer depending on the specific training conducted.

117.    Plaintiff Vigueras also executed long-term active-duty military orders three times during his employment with LAPD. These mobilizations varied in duration and location, but include months-long deployments to Afghanistan, Iraq, and other countries throughout the Middle East.

118.    In 2014, Plaintiff Vigueras was ordered to active duty by the USAR to support Operation Enduring Freedom. He was deployed for eighteen months. During this deployment, Plaintiff Vigueras developed plans for counterterror training for use during partnering missions with friendly host-nation military forces throughout the Middle East.

119.    Upon his return to employment at LAPD in August 2016, Plaintiff Vigueras was met with hostility from his commanding officers, Captain Al Pasos, Captain Al Neal, and Captain Louis Paglialonga for taking military leave.

120.    On several occasions after Plaintiff Viguera's return to work, Captain Paglialonga told Plaintiff Vigueras that Lieutenants "should not deploy" and that Plaintiff Vigueras "should think about leaving the [military] service" if he wanted to be promoted in the LAPD.

121.   Plaintiff Vigueras was subjected to daily harassment, discrimination and humiliation by Captains Neal and Pasos. He was called to Captain Pasos' officer over the station intercom approximately twice a week and then "dressed down" by Captains Pasos and Captain Neal over the amount of military leave he had taken, and how his continued military service was not good for his career in the LAPD. They accused Plaintiff Vigueras of shirking his responsibilities as a law enforcement officer, and threatened him with demotion and termination because Plaintiff Vigueras was still in his probationary period as a Lieutenant I.

122.   Captains Pasos, Neal, and Paglialonga's treatment of Plaintiff Vigueras undermined his authority over his subordinates.  When Plaintiff Vigueras asked Captain Pasos if it was necessary to continue calling him over the intercom in front of his subordinates, Captain Pasos responded that he "wanted to get [Plaintiff Vigueras'] attention."

123.   Captain Pasos also told Plaintiff Vigueras that he was not allowed to take time off to attend his USAR AT event because of the amount of time he had already taken for military leave.

124.   Upon information and belief, Captain Pasos contacted officials at the City of Los Angeles to see if there was any way to prevent Plaintiff Vigueras from going on his military AT in 2017.

125.   Captains Pasos, Neal, and Paglialonga's hostile treatment against Plaintiff Vigueras was so pervasive, that Plaintiff Vigueras had to reach out to LAPD Military Liaison, Mr. Ryan White to intervene and advise that they could not retaliate against Plaintiff Vigueras for taking military leave, or prevent him from conducting his military service obligation, such as his AT.

126.   In March of 2017, Plaintiff Vigueras requested to attend the Enhanced

Incident Management/Unified Command course offered by the University of Texas A&M Engineering Extension Service (TEEX), on behalf of the Department of Homeland Security. The LAPD regularly permitted their employees to take this training.

127.    Captain Al Neal told Plaintiff Vigueras that he would not approve the training due to the amount of time Plaintiff Vigueras had taken off for military leave, and that his denial to approve the training would be supported by the LAPD Operations South Bureau Deputy Chief.  Plaintiff Vigueras had to use his own accrued regular days off to attend the TEEX training in April of 2017.

128.    In 2018, Plaintiff Vigueras took and passed the written and oral examination for promotion to the rank of Captain I.

129.    On December 4, 2018, the Personnel and Training Bureau of the LAPD announced the names and "whole score grades" of the candidates for promotion to the rank of Captain I. Plaintiff Vigueras was placed in the Rank 6 category, with a "whole score grade" of 70. Rank 6 is the lowest band for promotion eligible candidates to Captain I.

130.    Upon information and belief, Plaintiff Vigueras' qualifications for promotion were superior to many of the candidates selected for promotion to Captain I in the LAPD from December 4, 2018 list. Plaintiff Vigueras had greater experience, training, education, credentials, and overall performance than several candidates selected for promotion to Captain I.

131.    Despite Plaintiff Vigueras' qualifications, he was not selected for promotion to Captain.

132.    Plaintiff Vigueras was not ranked higher on the December 4, 2018 list and not selected for promotion to Captain I with the LAPD because of his continued service

with the USAR. Specifically, LAPD unlawfully lowered his placement for promotion into the Rank 6 category and denied his promotion to Captain I because it did not want an employee in the rank of Captain I who also had a military service obligation and would be potentially required to take military leave.

133.   Upon information and belief, the December 4, 2018 list included at least two other candidates eligible for promotion to the rank of Captain I with military service obligations, Mr. Eric Quan in the Rank 3 Category, and Mr. Jose Martinez in the Rank 4 category. They were members of the USAR and United States Air Force Reserve (USAFR), respectively.

134.   Upon information and belief, neither Mr. Quan nor Mr. Martinez were selected for promotion by the LAPD to rank of Captain I.

135.   In April of 2019, Plaintiff Vigueras executed active-duty military orders with the USAR to support Operation Inherent Resolve. During this time, he was a military operations planner for a joint task force, coordinating with other U.S. agencies to counter terrorist organizations in the region. He additionally served as an Engagement Officer for a unit that advised and assisted the Palestinian Authority Police Services.

136.   Upon Plaintiff Vigueras' return to work in August of 2021, he requested to take the Captain I promotion examination. He conducted the written portion of the exam that month, and then the oral portion that following September.

137.   During the oral examination, Plaintiff Vigueras informed the LAPD board that he intended to retire from the USAR, and how his recent deployment experiences qualified him for the position of Captain I.

138.   On October 7, 2021, the Administrative Services Bureau of the LAPD announced the revised names and "whole score grades" of the candidates for promotion to the rank of Captain I. Plaintiff Vigueras was placed in the Rank 3 category, with a

"whole score grade" of 81.

139.    Upon information and belief, Plaintiff Vigueras' qualifications for promotion were superior to many of the candidates selected for promotion to Captain I in the LAPD from October 7, 2021 list. Plaintiff Vigueras had greater experience, training, education, credentials, and overall performance than several candidates selected for promotion to Captain I.

140.    Despite Plaintiff Vigueras' qualifications, he was not selected for promotion to Captain.

141.    Upon information and belief, the October 7, 2021 list included at least four other candidates eligible for promotion to the rank of Captain I with military service obligations: Mr. Quan, Mr. Martinez, and Plaintiff Russo in Rank 3, and Plaintiff Craig in Rank 4.

142.    Neither Plaintiff Craig nor Plaintiff Russo were selected for promotion to Captain I. Upon information and belief, neither Mr. Quan nor Mr. Martinez were selected for promotion to Captain I.

143.    Upon information and belief, LAPD promoted at least two of the candidates from the October 7, 2021 list in the Rank 6 category to the rank of Captain I.

144.    Rather than face the embarrassment and humiliation of not being selected for promotion to Captain I again despite his extensive credentials and qualifications for the position, Plaintiff Vigueras chose to retire from the LAPD as a Police Lieutenant I, effective July 31, 2022.

## V.    CLASS ACTION ALLEGATIONS

145.    Plaintiffs bring this action on behalf of themselves, and all others similarly situated, as a class action pursuant to Rule 23(a) and 23(b)(1), 23(b)(2), and/or (b)(3) of

the Federal Rules of Civil Procedure. The nationwide Class which Plaintiffs seek to represent are current and former employees of LAPD who are or were members of the United States Armed Services Reserves or National Guard and who took or have taken military leave while being employed by LAPD.

146.    Plaintiffs are members of the Class they seek to represent.

147.    The members of the Class are sufficiently numerous such that joinder of all members is impracticable. LAPD is the third-largest police department in the United States and employs over 12,000 persons. Although this number does not specify those who did serve or are actively serving in the National Guard or Reserves, Plaintiffs are informed and believe that the Class exceeds 100 present and former Company employees. The exact size of the Class is ascertainable through LAPD and COLA records, including but not limited to LAPD and COLA's employment records.

148.    There are questions of law and fact common to the Class, and these questions predominate over individual questions. Such questions include, without limitation:

> A.  whether LAPD's practice of allowing vacation and sick time to accrue for employees on paid military leave but not for employees on comparable, unpaid military leave violates USERRA;
>
> B.  whether LAPD's practice of providing differential pay to employees on military leave who perform certain types of military service, while denying differential pay to employees who performed other types of military service violates USERRA;
>
> C.  whether LAPD's practice of limiting the amount of paid military leave to 174 hours, violates the California

Military and Veterans Code Section 395.02[2];

D.  whether LAPD's practice of reducing the number of credit hours converted from days to less than eight (8) hours per day for military leave only, while allowing eight (8) credit hours per days for other comparable forms of non-military leave violates USERRA;

E.  whether LAPD's practice of requiring employees to submit three (3) copies of military orders to LAPD before military leave will be "approved" violates USERRA;

F.  whether LAPD's practice of requiring employees to complete an Employee Report Form 15.7 before military leave will be "approved" violates USERRA;

G.  whether LAPD's practice of requiring employees to a Military Leave Notification Form (LAPD Form 1.36.05) to the Military Liaison before military leave will be "approved" violates USERRA;

H.  whether LAPD's practice of requiring employees to submit DD-214 forms to LAPD upon completion of military leave violates USERRA;

I.  whether LAPD's practice of requiring employees to undergo psychological testing upon completion of military leave; but not for other employees returning from other forms of leave violates USERRA;

J.  whether LAPD's practice of denying promotions to military servicemember employees who perform military service obligations violates USERRA;

K.  whether LAPD's acts and practices have violated USERRA by discriminating against its employees who are members of the National Guard or Reserves and have

---

[2] Plaintiffs will timely amend this Complaint to allege violations of the CA MVC after complying with applicable government claims process requirements.

taken military leave;

L. whether Plaintiffs and the Class are entitled to compensatory and/or liquidated damages, and;

M. whether injunctive and other equitable remedies for the Class are warranted.

149.   The named Plaintiffs will fairly and adequately represent and protect the interests of the Class and have no conflict of interests with the Class.

150.   Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Plaintiffs retained adequate counsel who have substantial experience and success in the prosecution of class actions, including USERRA class actions, and complex business litigation matters.

151.   Class certification is also appropriate pursuant to Fed. R. Civ. Proc. Rule 23(b)(2) because the Company has acted on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief to Plaintiffs and the Class as a whole. The Class members are entitled to injunctive relief to end the Company's practices that have caused military affiliated employees to be terminated because of their military service obligations and to be treated differently than employees without military service obligations.

## VI.   FIRST CAUSE OF ACTION – Sick Time Accrual, Violations of 38 U.S.C. § 4301, *et seq.*

152.   Plaintiffs hereby allege and incorporate all paragraphs 1-151 above by reference herein.

153.   Employees on military leave are entitled to the same non-seniority-based benefits provided to other employees on similarly-situated, non-military related leaves of absence.  38 U.S.C. § 4316(b)(1)(B).

154.   Upon information and belief, LAPD employees taking paid military leave

of thirty days or less accumulate their full amount of sick time accrual as if they were not on a military leave of absence. LAPD employees taking unpaid military leave will only have their sick time replenished if they worked one day during the previous calendar year.

155.    Upon information and belief, LAPD employees taking unpaid military leave are entitled to additional sick time because non-military employees accrue sick leave during longer periods of other types of non-military leave.

156.    Plaintiffs and the Class's military service obligations were a motivating factor in LAPD's discriminatory actions.

157.    LAPD knowingly and willfully violated USERRA, among other ways, by discriminating against Plaintiffs and the Class members, and by denying them employment benefits "on the basis of" their "obligation to perform service in a uniformed service."

158.    As a direct and proximate result of the conduct of the LAPD, as set forth in this count, Plaintiffs and the Class have suffered injuries and damages including but not limited to loss of past and future benefits, all to their damage in an amount to be proven at trial.

159.    Plaintiff alleges such violations of USERRA were willful and requests liquidated damages to the Class in an additional amount equal to the present value of their lost sick time benefits pursuant to Section 4323(d)(1)(C).

## VII.    SECOND CAUSE OF ACTION – Vacation Time Accrual, Violations of 38 U.S.C. § 4301, *et seq.*

160.    Plaintiffs hereby allege and incorporate all paragraphs 1-159 above by reference herein.

161.    Employees on military leave are entitled to the same non-seniority-based benefits provided to other employees on similarly-situated, non-military related leaves

of absence.  38 U.S.C. § 4316(b)(1)(B).

162.   Upon information and belief, LAPD has a regular days off ("RDO") policy wherein employees are entitled to eight regular days off during a 28-day deployment period.  Additionally, employees are entitled to thirteen days off in lieu of holidays for each year.

163.   Upon information and belief, LAPD reduces an employee's unused RDOs and/or holiday time off by one day for every three and one-quarter days an employees is absent from duty due to taking paid military leave and/or unpaid military leave.

164.   Upon information and belief, non-military LAPD employees do not have their RDOs or holiday time reduced when taking other types of non-military leave.

165.   Upon information and belief, LAPD employees taking paid military leave of thirty days or less accumulate their full amount of vacation time accrual as if they were not on a military leave of absence.  LAPD employees taking unpaid military leave have their vacation time prorated according to the amount of time they were on unpaid military leave the previous calendar year.

166.   Upon information and belief, LAPD employees taking unpaid military leave are entitled to additional vacation time because non-military employees accrue sick leave during periods of other types of non-military leave.

167.   Plaintiff's and the Class's military service obligations were a motivating factor in LAPD's discriminatory actions.

168.   LAPD knowingly and willfully violated USERRA, among other ways, by discriminating against Plaintiffs and the Class members, and by denying them employment benefits "on the basis of" their "obligation to perform service in a uniformed service."

169.   As A direct and proximate result of the conduct of LAPD as set forth in

this count, Plaintiffs and the Class have suffered injuries and damages including but not limited to loss of past and future benefits, with damages in an amount to be proven at trial.

170.    Plaintiffs allege such violations of USERRA were willful and request liquidated damages to the Class in an additional amount equal to the present value of their lost vacation time benefits pursuant to Section 4323(d)(1)(C).

## VIII.  THIRD CAUSE OF ACTION – Differential Pay, Violations of 38 U.S.C. § 4301, *et seq*.

171.    Plaintiffs hereby allege and incorporate all paragraphs 1-170 above by reference herein.

172.    Upon information and belief, an LAPD employee is entitled to 174 hours of paid military leave for certain types of military service.

173.    Upon information and belief, the COLA provides differential pay (the difference between their LAPD pay and military pay, if their military pay is less) to LAPD employees after exhaustion of the LAPD 174 hours of paid military leave for performing certain types of military service.  These "enhanced military leave benefits" also include continued medical and dental insurance for the employee and their beneficiaries during the employee's military service period.

174.    Upon information and belief, the COLA only permits payment of the enhanced military leave benefits for employees performing military service for specific contingency operations, such as Operation Enduring Freedom.  The COLA does not offer enhanced military leave benefits for employees performing other types of military service, such as military schools, professional military education, and non-contingency operations.

175.    The COLA and LAPD's policy and practice of enhanced military leave benefits to its employees performing military service other than contingency operations

violates USERRA.

176.    Plaintiffs and the Class's protected status as members of the military was a motivating factor in LAPD's denial of benefits, conditions, and privileges of Plaintiffs' employment, to include denying enhanced military leave benefits without good cause, and as a result of their military responsibilities.

177.    LAPD knowingly and willfully violated USERRA, among other ways, by discriminating against Plaintiffs and the Class members, and by denying them enhance military leave benefits "on the basis of" their "obligation to perform service in a uniformed service."

178.    As A direct and proximate result of the conduct of LAPD as set forth in this count, Plaintiffs and the Class have suffered injuries and damages including but not limited to loss of past and future enhanced military leave benefits, with damages in an amount to be proven at trial.

179.    Plaintiffs allege such violations of USERRA were willful and request liquidated damages to the Class in an amount equal to the amount of denied past and future enhanced military leave benefits in an amount to be proven at trial.

## IX.    FOURTH CAUSE OF ACTION – Unlawful Military Leave "Approval" Requirements, Violations of 38 U.S.C. § 4301, et seq.

180.    Plaintiffs hereby allege and incorporate all paragraphs 1-179 above by reference herein.

181.    USERRA expressly supersedes any state or local law, agreement, and/or employer policy. 38 U.S.C. § 4302(b); 20 C.F.R. § 1002.7(b).

182.    An employee need not request time off or permission to perform military service obligations. The employee must give notice to the employer, such notice may be verbal or written, and need not follow any particular format. 20 C.F.R. §§ 1002.87; 1002.85(b).

183.   An employee need not provide documentation prior to performing periods of military service obligations, only upon reemployment after periods of service of more than thirty days. 20 C.F.R. §§ 1002.121; 1002.122; 1002.123.

184.   Upon information and belief, the LAPD requires employees performing military service to complete an "Employee's Report, Form 153.07.00" to their respective LAPD Commanding Officer, and supply three certified copies of military orders and a "Military Leave Notification, Form 01.36.05." to the LAPD Records Division, prior to their military leave being approved.

185.   LAPD knowingly and willfully violated USERRA, among other ways, by discriminating against Plaintiffs and the Class members by requiring them to provide an onerous and unlawful process before their military leave would be approved.

186.   Plaintiffs and the Class allege such violations of USERRA were willful and request liquidated damages to the Class in an amount to be proven at trial.

## X.    FIFTH CAUSE OF ACTION – Discriminatory Re-employment Requirements, Violations of 38 U.S.C. § 4301, *et seq*.

187.   Plaintiffs hereby allege and incorporate all paragraphs 1-186 above by reference herein.

188.   Section 4312 of USERRA provides:

> [A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter…

38 U.S.C. §4312(a).

189.   Section 4313 of USERRA (further codified by 20 C.F.R. § 1002.191) provides that an employee is entitled to be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she

would have attained if not for the period of service.

190.    Section 4316 of USERRA provides that any period of absence from employment due to or necessitated by uniformed service is not considered a break in employment, so an employee absent due to military duty must be treated as though they were continuously employed.

191.    Section 4316 further provides that a person who is reemployed "is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed."

192.    "The employer must determine the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service." 20 C.F.R. §1002.193.

193.    Upon information and belief, LAPD employees returning from military service are subject to a reintegration interview, medical examinations, psychological examinations, background checks, and reintegration training which may include repeat completion of the LAPD Academy, Structured Field Training Program, and/or other tactical, firearms, and POST training before returning to full duty.

194.    Upon information and belief, the LAPD additionally requires employees returning from military service to provide a copy of Department of Defense Form 214 (DD-214) to the LAPD Return to Work Section.

195.    Upon information and belief, other LAPD employees taking non-military leaves of absence are not subject to the same reintegration process as those who have taken military leave.

196.    LAPD's reemployment policy and practice for employees performing

military service violates USERRA.

197.    Plaintiffs and the Class's protected status as members of the military was a motivating factor in LAPD's denial of benefits, conditions, and privileges of Plaintiffs' employment, to include unlawful reemployment practices, and as a result of their military responsibilities.

198.    LAPD knowingly and willfully violated USERRA, among other ways, by discriminating against Plaintiffs and the Class members, and by denying them prompt reemployment "on the basis of" their "obligation to perform service in a uniformed service."

199.    As A direct and proximate result of the conduct of LAPD as set forth in this count, Plaintiffs and the Class have suffered injuries and damages including but not limited to loss of past and future benefits, with damages in an amount to be proven at trial.

200.    Plaintiffs allege such violations of USERRA were willful and request liquidated damages to the Class in an amount equal to the amount of denied past and future benefits in an amount to be proven at trial.

201.    Plaintiffs allege such violations of USERRA were willful and request liquidated damages to the Class in an amount to be proven at trial.

## XI.    SIXTH CAUSE OF ACTION – Failure to Promote Based on Military Service Obligations, Violations of 38 U.S.C. § 4301, *et seq.*

202.    Plaintiffs hereby allege and incorporate all paragraphs 1-201 above by reference herein.

203.    USERRA prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. §4301(a)(3).

204.    Section 4311(a) of USERRA states in relevant part, that a person "who is a member of… performs, has performed…or has an obligation to perform service in a

uniformed service shall not be denied… promotion…or any benefit of employment by an employer on the basis of that membership… performance of service, or obligation." (emphasis added).

205.    Section 4311(c) further provides, in relevant part, that "[an] employer shall be considered to have engaged in actions prohibited… if the person's membership… or obligation for service in the uniformed services is a motivating factor in the employer's action."

206.    LAPD's policy and practice of denying promotions to its employees due to their taking leave to perform military duty violates USERRA.

207.    Plaintiffs and the Class's protected status as members of the military was a motivating factor in LAPD's denial of benefits, conditions, and privileges of Plaintiffs' employment, to include denying promotions to higher ranks in the LAPD without good cause, and as a result of their military responsibilities.

208.    LAPD knowingly and willfully violated USERRA, among other ways, by discriminating against Plaintiffs and the Class members, and by denying them promotion and employment benefits "on the basis of" their "obligation to perform service in a uniformed service."

209.    As A direct and proximate result of the conduct of LAPD as set forth in this count, Plaintiffs and the Class have suffered injuries and damages including but not limited to loss of past and future benefits, with damages in an amount to be proven at trial.

210.    Plaintiffs allege such violations of USERRA were willful and request liquidated damages to the Class in an additional amount equal to the amount of lost wages and future earnings related to denied promotions, to be proven at trial.

211.    USERRA prohibits "discrimination against persons because of their

service in the uniformed services." 38 U.S.C. §4301(a)(3).

212.    Section 4311(a) of USERRA states in relevant part, that a person "who is a member of… performs, has performed…or has an obligation to perform service in a uniformed service shall not be denied… promotion…or any benefit of employment by an employer on the basis of that membership… performance of service, or obligation." (emphasis added).

213.    Section 4311(c) further provides, in relevant part, that "[an] employer shall be considered to have engaged in actions prohibited… if the person's membership… or obligation for service in the uniformed services is a motivating factor in the employer's action."

214.    "Benefit" is defined as:

The term 'benefit', 'benefit of employment', or 'rights and benefits' means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment."

38 U.S.C. §4303(2).

215.    A "benefit of employment" includes the right to select work hours or the location of employment. 20 C.F.R. §1002. 5(b).

216.    In the Department of Labor's Fiscal Year 2010 report to Congress (published in July 2011), the department clarified its interpretation that a "benefit of employment" included freedom from workplace harassment and/or a hostile work environment:

> The Department of Labor considers it a violation of USERRA for an employer to cause or permit workplace harassment, the creation of a hostile working environment, or to fail to take prompt and effective action to correct harassing conduct because of an individual's membership in the uniformed service or uniformed service obligations.

Department of Labor (USERRA) Fiscal Year 2010 Report to Congress.

217.    USERRA's definition of "service in the uniformed services" covers all categories of military training and service, including duty performed on a voluntary or involuntary basis, in time of peace or war. 38 U.S.C. §4312(e)(1)(A)(i); 20 C.F.R. §1002.115. (emphasis added).

218.    Section 4312 of USERRA provides:

> [A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter…

38 U.S.C. §4312(a).

219.    Section 4313 of USERRA (further codified by 20 C.F.R. § 1002.191) provides that an employee is entitled to be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service.

220.    Section 4316 of USERRA provides that any period of absence from employment due to or necessitated by uniformed service is not considered a break in employment, so an employee absent due to military duty must be treated as though they were continuously employed.

221.    Section 4316 further provides that a person who is reemployed "is entitled to the seniority and other rights and benefits determined by seniority that the person had

on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed."

222. "The employer must determine the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service." 20 C.F.R. §1002.193.

223. USERRA expressly supersedes any state or local law, agreement, and/or employer policy. 38 U.S.C. § 4302(b); 20 C.F.R. § 1002.7(b).

224. An employee need not request time off or permission to perform military service obligations. The employee must give notice to the employer, such notice may be verbal or written, and need not follow any particular format. 20 C.F.R. §§ 1002.87; 1002.85(b).

225. An employee need not provide documentation prior to performing periods of military service obligations, only upon reemployment after periods of service of more than thirty days. 20 C.F.R. §§ 1002.121; 1002.122; 1002.123.

226. USERRA provides at a minimum, an employee must have enough time after leaving the employment position to travel safely to the uniformed service site and arrive fit to perform the service. "If the employee performs a full overnight shift for the civilian employer and travels directly from the work site to perform a full day of uniformed service, the employee would not be considered fit to perform the uniformed service. An absence from that work shift is necessitated so that the employee can report for uniformed service fit for duty." 20 C.F.R. § 1002.74(a).

227. An employee may use any paid time off ("PTO") during his or her period of military leave, but an employer may not require the employee to use accrued vacation, annual, or similar leave during a period of service in the uniformed services.

38 U.S.C. § 4316(d); 20 C.F.R. §1002.153.

228.    Plaintiffs' protected status as members of the military was a motivating factor in LAPD's denial of benefits, conditions, and privileges of Plaintiffs' employment, to include denying promotions to higher ranks in the LAPD without good cause, and as a result of their military responsibilities.

229.    One of the benefits of employment available to the Plaintiffs and the Class is the right to retention in employment while performing their military service obligations, and to be provided the same seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service.

230.    LAPD's policy and practice of denying promotions to its employees due to their taking leave to perform military duty violates USERRA.

231.    LAPD's policy of denying training opportunities to its employees due to their taking leave to perform military duty violates USERRA.

232.    Plaintiffs and the Class's military service obligations were motivating factors in LAPD's discriminatory actions.

233.    LAPD knowingly and willfully violated USERRA, including but not limited to Section 4311, 4312, 4313 and 4316, among other ways, by discriminating against Plaintiffs and the Class members, and by denying them employment benefits "on the basis of" their "obligation to perform service in a uniformed service."

234.    As a direct and proximate result of the conduct of LAPD, as set forth in this count, Plaintiffs and the Class have suffered injuries and damages including but not limited to loss of past and future benefits, all to their damage in an amount to be proven at trial.

235.    Plaintiffs alleges such violations of USERRA were willful and request liquidated damages to the Class in an additional amount equal to the present value of

their lost wages and other benefits pursuant to Section 4323(d)(1)(C).

## JURY DEMAND

236.    Pursuant to Federal Rule of Civil Procedure 38 or any similar rule or law, Plaintiffs demand a trial by jury for all causes of action and issues for which trial by jury is available.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Plaintiffs pray for relief against Defendants, and each of them, as follows:

1.    Determine that this action may proceed and be maintained as a class action, designating Plaintiffs as Lead Plaintiffs, and certifying Plaintiffs as the Class representatives under Rule 23 of the Federal Rules of Civil Procedure and their counsel of record as Class Counsel;

2.    Declare that the acts and practices complained of herein are unlawful and are in violation of USERRA;

3.    Require that LAPD and COLA fully comply with the provisions of USERRA by providing Plaintiffs and Class Members all employment benefits denied them as a result of LAPD and COLA's unlawful acts and practices described herein;

4.    Enjoin LAPD and COLA from taking any action against Plaintiffs and members of the Class that fail to comply with the provisions of USERRA;

5.    Award fees and expenses, including attorneys' fees pursuant to 38 U.S.C. §4323(h);

6.    Award Plaintiffs and the Class prejudgment interest on the amount of lost wages or employment benefits due;

7.    Order that LAPD and COLA pay compensatory and/or liquidated damages in an amount equal to the amount of lost compensation and other benefits suffered due

to its willful violations of USERRA;

       8.    Grant an award for costs of suit incurred; and

       9.    Grant such other and further relief as may be just and proper and which Plaintiffs and the Class may be entitled to under all applicable laws.

DATED: August 11, 2023

*/s/ Brian J. Lawler*
Brian J. Lawler