Brian J. Lawler SBN 221488
**PILOT LAW, P.C.**
4632 Mt. Gaywas Drive
San Diego, CA 92117

Tel: (619) 255-2398

Email: blawler@pilotlawcorp.com

Kevin L. Wilson (*Pro Hac Vice*)
**KEVIN WILSON LAW PLLC**
3110 Horton Avenue
Louisville, KY 40220
Tel: (502) 276-50-50
Email: kevin@klwilsonlaw.com

Gene J. Stonebarger, SBN 209461
**STONEBARGER LAW, APC**
101 Parkshore Dr., Suite 100
Folsom, CA 95630
Tel: 916-235-7140
Email: gstonebarger@stonebargerlaw.com

Timothy A. Loranger, SBN 225422
Matthew P. French, SBN 327814
**WISNER BAUM**
11111 Santa Monica Blvd., Suite 1750
Los Angeles, CA 90025
Tel: (310) 207-3233
Email: tloranger@wisnerbaum.com
Email: mfrench@wisnerbaum.com

*Counsel for Plaintiff*
*And the putative Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CRAIG, an individual, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>CITY OF LOS ANGELES, a municipal entity, and LOS ANGELES POLICE DEPARTMENT, a municipal entity,<br><br>                    Defendants. | Case No.: 2:23-cv-06581-SVW-JPR<br><br>**<u>CLASS ACTION</u>**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**VIOLATIONS OF 38 U.S.C. §4301 *ET SEQ.***<br><br>**FILING FEE WAIVED PER 38 U.S.C. § 4323(h)**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff DAVID CRAIG ("Plaintiff"), on behalf of himself and all other similarly situated, hereby submits his Second Amended Complaint against Defendants CITY OF LOS ANGELES ("COLA") and LOS ANGELES POLICE DEPARTMENT ("LAPD"), as follows:

## I.   NATURE OF THE ACTION

1.    This is a civil action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 *et. seq.* ("USERRA"). It is brought by Plaintiff on behalf of himself and a nationwide Class of all persons similarly situated, including current and former employees of the City of Los Angeles Police Department who were or are currently serving in the reserve component of the United States Armed Forces and National Guard, including a Subclass of those Class members who took unpaid military leave from LAPD.

## II.   PARTIES

### A.   Plaintiff David Craig

2.    Plaintiff David Craig ("Plaintiff Craig") is a citizen of the United States and a resident of Idaho.

3.    Plaintiff Craig was employed by Defendant and retired as a Police Lieutenant II in the Los Angeles Police Department. At all times relevant, Plaintiff Craig worked for Defendant in Los Angeles, California.

4.    At all times relevant, Plaintiff Craig served as a commissioned officer in the California Army National Guard ("CA-ARNG").

5.    During the relevant times referenced herein, Plaintiff Craig was a qualified employee and member of the uniformed services as defined by 38 U.S.C. §4303(3) and (16).

**B.    Defendants, the City of Los Angeles, and the Los Angeles Police Department**

6.     Plaintiff is informed, believes, and alleges that Defendant COLA is a municipal entity duly organized and existing under the Constitution and laws of the State of California and exercises authority in this judicial district. At all times relevant, COLA is and was an employer for purposes of 38 U.S.C. § 4303(4)(A) and § 4323(i).

7.     Plaintiff is informed, believes, and alleges that Defendant LAPD is a municipal entity and an agency of Defendant COLA and exercises authority in this judicial district. At all times relevant, the LAPD is and was an employer for purposes of 38 U.S.C. § 4303(4)(A) and § 4323(i).

8.     Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees/agents of Defendants, or any of them herein, such individuals at all times acted on behalf of Defendants named in this action within the scope of their respective employments and agencies.

9.     Whenever and wherever reference is made in this Complaint to any conduct of Defendants, or any of them, such allegations or references shall also be deemed to mean the conduct of each Defendant, acting individually, jointly and severally.

10.    At all times relevant to this Complaint, Defendants were the agents and employees of their co-Defendants, and in doing the things alleged in this Complaint were acting within the course and scope of that agency and employment.

11.    Plaintiff does not seek any category of relief greater than or different from the relief sought for the Class of which Plaintiff is a member. This action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or non-pecuniary, on a large class of persons.

Private enforcement is necessary and individual prosecution places a disproportionate financial burden on Plaintiff in relation to Plaintiff's stake in the matter.

## III.    JURISDICTION AND VENUE

12.    The jurisdiction of this court is founded on federal question jurisdiction, 28 U.S.C. §1331, as conferred by 38 U.S.C. §4323(b)(3).

13.    Venue is proper because Defendant LAPD is a municipal entity and an agency of Defendant COLA, exercising authority in this judicial district, as provided in 38 U.S.C. §4323(c)(1) and 28 U.S.C. §1391(b).

14.    Pursuant to 38 U.S.C. § 4323(h), "No fees or court costs may be charged or taxed against any person claiming rights under [USERRA]".

## IV.    GENERAL ALLEGATIONS

15.    LAPD has policies and practices of denying benefits of employment to its employees, including Plaintiff and the Class, because of their military service obligations, in violation of USERRA. These violations include, but are not limited to:

    A.    Allowing vacation and sick time to accrue for employees on paid military leave but not for employees on comparable, unpaid military leave;

    B.    Limiting the amount of paid military leave to 174 hours, in violation USERRA;

    C.    Reducing the number of credit hours converted from days to less than eight (8) hours per day for military leave only, while allowing eight (8) credit hours per days for other comparable forms of non-military leave;

    D.    Denying promotions to military servicemember employees who perform military service obligations.

16.    Plaintiff Craig enlisted in the United States Air Force Reserve (USAFR)

in 1991, serving three years before transferring to the CA-ARNG in 1994, and then receiving a commission to the rank of Second Lieutenant in 1996.

17.     Plaintiff Craig began his employment with the LAPD as a sworn officer in January of 1995 as a Police Officer I. Throughout his twenty-eight-year career with the LAPD, he progressed through the ranks up to the rank of Police Lieutenant II.

18.     In 2006, Plaintiff Craig was promoted to the position of Police Detective I, wherein he was hand-picked to conduct complex investigations into homicides, robberies, and other high-profile crimes in the 77th Criminal Gang Homicide Group and Southeast Patrol Divisions.

19.     As a Police Sergeant I, Plaintiff Craig worked as a Patrol Supervisor in West Los Angeles and 77th Patrol Division. Subsequently, he was selected to the Operations South Bureau as the Special Events Coordinator, wherein he was responsible for planning police response to large-scale public events, such as football games, public demonstrations, parades, and other unusual occurrences.

20.     As a Police Sergeant II, Plaintiff Craig worked in the Gang and Narcotics Division as the Narco Administrative Supervisor and the Gun Unit Supervisor.

21.     As a Police Lieutenant I, Plaintiff Craig worked as the West Valley Patrol Watch Commander. During this time, Plaintiff Craig was tasked to fill in as the Patrol Commanding Officer several times during the absence of the Patrol Commanding Officer.

22.     As a Police Lieutenant II, Plaintiff Craig worked as the Gang Impact Team Officer in Charge in the West Valley Division, and was also placed in charge of the Vice Unit. In this position, Plaintiff Craig grew the unit through recruiting excellent people and expanded capacity through building relationships and coordination with other agencies and adjacent units. Under his direction, the Narcotics Enforcement Detail

("NED") coordinated with the California Cannabis Enforcement Unit and other Division NEDs leading to significant seizures of marijuana and the closure of dozens of illegal cannabis grows and retail establishments.

23.    Plaintiff Craig's academic accomplishments include a Bachelor of Arts degree in History, an Associates of Science in Aircraft Systems Maintenance, and a Master of Arts degree in Homeland Security (*cum laude*).

24.    Specific to his duties as a law enforcement officer, Plaintiff Craig earned academic credentials by completing the Basic, Intermediate, Advanced, Supervisory, and Management Certificates from the California Commission on Police Officer Standards and Training (POST). He has also completed the POST Management course, the Intermediate Incident Command System course, the Advanced Command General Staff course, and the Enhanced All Hazards Incident Management Course.

25.    Much of Plaintiff Craig's military experience contributes to his career in law enforcement. For example, when Plaintiff Craig was hand-selected to serve as a Police Advisor to the Kandahar Chief of Police in 2017-2018 while in support of Operation Freedom's Sentinel. In this role, he advised an Afghan General in all facets of Police training and employment.

26.    During Plaintiff Craig's over thirty-two years military career, he has held several key leadership responsibilities, including command of a Field Artillery Battalion composed of over five hundred soldiers which was recognized as the best in the California Army National Guard in the metrics of military readiness and retention. His many accomplishments have been recognized by award of the Combat Action Badge, Bronze Star Medal, Meritorious Service Medal, Army Commendation Medal, Air Force Commendation Medal, Army Achievement Medal, Air Force Achievement Medal, Military Outstanding Volunteer Service Medal, and the California Medal for

Merit.

27.     Throughout the entirety of his career with the LAPD, Plaintiff Craig attended monthly inactive duty training periods, or "battle assembly," per his military service obligation with the CA-ARNG. These lasted approximately two-to-four days each, and generally occurred during the weekend. However, some of the battle assemblies required Plaintiff Craig to take unpaid military leave from his employment with LAPD during the week to accommodate the CA-ARNG training requirements.

28.     Despite having a military leave policy that provides unpaid military leave for LAPD employees performing military service at a "battle assembly" or "drill," LAPD required Plaintiff Craig to schedule his regular days off on his battle assembly dates, to prevent him from taking additional unpaid military leave from his employment at LAPD.

29.     In addition to monthly battle assembly, Plaintiff Craig was generally required to take military leave from his employment with LAPD to conduct "annual training" every year. Annual training, or "AT," generally lasted two-to-three weeks, but could be longer depending on the specific training conducted.

30.     Plaintiff Craig also executed long-term active-duty military orders seven times during his employment with LAPD. These mobilizations varied in duration and location, but include months-long deployments to Afghanistan, Iraq, Kosovo, and others in support of domestic mission, such as responses to wildfires, riots, and homeland security matters.

31.     In early 2021, Plaintiff Craig took and passed the written and oral examination for promotion to the rank of Captain I.

32.     On April 28, 2021, the Administrative Services Bureau of the LAPD announced the names and "whole score grades" of the candidates for promotion to the

rank of Captain I. Plaintiff Craig was placed in the Rank 4 category, with a "whole score grade" of 80.

33.     The "whole score grade" includes a candidate's score on the written exam and oral interview – weighted 30% and 70% of the total score, respectively. Captains may also receive additional points related to time served in the LAPD as a Lieutenant, up to one additional point towards their "whole score grade."

34.     The LAPD Chief of Police is not required to promote Captains in sequence of their Rank placement. Instead, the Chief of Police may exercise discretion in selecting who to promote beyond the candidates "whole score grade," and may skip eligible candidates in a higher-scoring band to promote another candidate for promotion in a lower band at his discretion.

35.     At the time in Plaintiff Craig's eligibility for promotion to Captain I, the LAPD Chief of Police was Michel Moore ("Chief Moore"). Chief Moore served as the LAPD Chief of Police from 2018 until 2024.

36.     Chief Moore knew of Plaintiff Craig's military service affiliation prior to Plaintiff Craig's eligibility for promotion to Captain I.  Chief Moore and Plaintiff Craig met in 2017, prior to Plaintiff Craig's deployment to Afghanistan. Chief Moore and Plaintiff Craig met several times during Plaintiff Craig's employment with LAPD, including a meeting in August of 2018 at Chief Moore's office following Plaintiff Craig's reemployment to LAPD after his mobilization to Afghanistan wherein Chief Moore hosted a promotion ceremony for Plaintiff Craig that occurred while Plaintiff Craig was performing military service in Afghanistan.

37.     In December of 2018, Plaintiff Craig received an "Honorable Recognition" certificate signed by Chief Moore, including both Plaintiff Craig's military rank of Lieutenant Colonel and his LAPD rank of Lieutenant I, stating "I would like to thank

you for your service, sacrifice, and unselfish leadership in the War against Terrorism…"

38.    In May of 2019, Plaintiff Craig met with Chief Moore in Washington, DC at an event in which Plaintiff Moore was wearing his military service decorations on his LAPD dress uniform.

39.    The April 28, 2021 list included thirty-nine candidates for promotion to Captain I in the Rank 1, 2 and 3 categories that scored higher than Plaintiff Craig, twenty-eight candidates that scored the same as Plaintiff Craig in the Rank 4 category, and at least six other candidates that scored less than Plaintiff Craig in the Rank 5, and Rank 6 categories.

40.    Upon information and belief, Plaintiff Craig's qualifications for promotion were superior to many of the candidates selected for promotion to Captain I in the LAPD from the April 28, 2021 list. Plaintiff Craig had greater experience, training, education, credentials, and overall performance than several candidates selected for promotion to Captain I.

41.    Plaintiff Craig had more time serving as a police officer with LAPD than 38 of the 53 persons who were selected for promotion to Captain I.

42.    Plaintiff Craig was a "dual status" officer, meaning that he served in LAPD as both a Detective and a Sergeant – a rare career path among LAPD police officers. His experience in this aspect included the arrest and conviction of a serial killer. Plaintiff Craig knows that at least six of those selected for promotion to Captain did not have "dual status" experience, and believes that less than half of those selected for promotion to Captain I did not have "dual status" experience.

43.    Plaintiff Craig had extensive experience in planning and responding to large scale events. This included his work on the largest multi-agency gang enforcement search warrant operation in LAPD history, Operation Pirate Town, in which Plaintiff

Craig received a commendation for his contribution. Additionally, Plaintiff Craig's formal training in this area, which included the Incident Command System in residence at Texas A&M Engineering Extension Service, and the Enhanced All-Hazards Incident Management/Unified Command training was typically reserved for LAPD Command Staff ranking Captain and above. No other candidates selected for promotion to Captain I had a greater level of training and experience in large scale events than Plaintiff Craig.

44.    Plaintiff Craig had tremendous field experience. As a Lieutenant II, he served as a both the OIC of the West Valley Division and the Vice Unit – which is typically staffed by two separate LAPD officers. The majority of those selected for promotion to Captain I did not have this level of responsibility in a supervisory role.

45.    Plaintiff Craig's organizational leadership experience far exceeded those were selected for promotion to Captain instead of him.  For example, as a Battalion Commander in the CAANG, Plaintiff Craig directed the actions of over 500 CAANG personnel, whereas the average LAPD patrol division consisted of only approximately 200 personnel.  None of those that were selected for promotion to Captain I are believed to have this level of organization leadership experience.

46.    Upon information and belief, less than half of those selected for promotion to Captain I held a Master's Degree-level of formal education. Plaintiff Craig holds a Master of Arts degree in Homeland Security (*cum laude*).

47.    Despite Plaintiff Craig's qualifications, he was not selected for promotion to Captain I.

48.    Upon information and belief, approximately fifty-three candidates from the April 28, 2021 list were promoted to the rank of Captain I.

49.    Upon information and belief, none of the candidates selected for promotion to Captain I from the April 28, 2021 list had a current military service obligation.

50.    Upon information and belief, the April 28, 2021 list included at least two other candidates eligible for promotion to the rank of Captain I with current military service obligations, Mr. Eric Quan in the Rank 3 Category, and Mr. Jose Martinez in the Rank 4 category. They were members of the USAR and United States Air Force Reserve (USAFR), respectively.

51.    Upon information and belief, neither Mr. Quan nor Mr. Martinez were selected for promotion by the LAPD to Captain I.

52.    Upon information and belief, LAPD promoted several candidates from the April 28, 2021 list to the rank of Captain I who scored in the Rank 4, Rank 5, and Rank 6 categories.

53.    Plaintiff Craig was not ranked higher on the April 28, 2021 list and not selected for promotion to Captain I because of his continued service with the CA-ARNG. Specifically, that the LAPD unlawfully denied his promotion to Captain I because they did not want an employee in the rank of Captain I who also had a military service obligation and potentially would be required to take military leave.

54.    Upon information and belief, Chief Moore used his discretion in selecting candidates for promotion to Captain I specifically to avoid selecting Plaintiff Craig to the position of Captain I due to his knowledge of Plaintiff Craig's continuing service in the CAANG, because he did not want an employee in the rank of Captain I who also had a military service obligation and would potentially be required to take military leave.

55.    Believing his continued military service would prevent him from being selected for promotion to Captain I despite his extensive credentials and qualifications for the position, Plaintiff Craig retired from the LAPD as a Police Lieutenant II, effective February 25, 2023.

## V.    CLASS ACTION ALLEGATIONS

56.    Plaintiff brings this action on behalf of himself, and all others similarly situated, as a class action pursuant to Rule 23(a) and 23(b)(1), 23(b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure.

57.    The nationwide Class which Plaintiff seeks to represent are:

**Class:** All current and former employees of LAPD who are or were members of the United States Armed Services Reserves or National Guard and who took or have taken military leave while being employed by LAPD.

58.    Plaintiff also seeks to represent the following Subclass:

**Unpaid Military Leave Subclass:** All current and former employees of LAPD who took unpaid military leave from LAPD.

59.    Plaintiff is a member of the Class and Subclass he seeks to represent.

60.    The members of the Class are sufficiently numerous such that joinder of all members is impracticable. LAPD is the third-largest police department in the United States and employs over 12,000 persons. Although this number does not specify those who did serve or are actively serving in the National Guard or Reserves, Plaintiff is informed and believes that the Class exceeds 100 present and former employees. The exact size of the Class is ascertainable through LAPD and COLA records, including but not limited to LAPD and COLA's employment records.

61.    There are questions of law and fact common to the Class, and these questions predominate over individual questions. Such questions include, without limitation:

A. whether LAPD's practice of limiting the amount of paid military leave to 174 hours, violates USERRA;

B. whether LAPD's practice of reducing the number of credit hours converted from days to less than eight (8) hours per

day for military leave only, while allowing eight (8) credit hours per days for other comparable forms of non-military leave violates USERRA;

C. whether LAPD's practice of denying promotions to military servicemember employees who perform military service obligations violates USERRA;

D. whether LAPD's acts and practices have violated USERRA by discriminating against its employees who are members of the National Guard or Reserves and have taken military leave;

E. whether Plaintiff and the Class are entitled to compensatory and/or liquidated damages, and;

F. whether injunctive and other equitable remedies for the Class are warranted.

62.    There are additional questions of law and fact common to the Unpaid Military Leave Subclass, and these questions predominate over individual questions. Such questions include, without limitation:

A. whether LAPD's practice of allowing sick time to accrue for employees on paid military leave but not for employees on comparable, unpaid military leave violates USERRA;

B. whether LAPD's practice of allowing vacation time to accrue for employees on paid military leave but not for employees on comparable, unpaid military leave violates USERRA; and

63.    The named Plaintiff will fairly and adequately represent and protect the interests of the Class, have retained well qualified and experienced Class counsel, and have no conflict of interests with the Class.

64.    Plaintiff's claims are typical of the claims of all Class members in that each took both paid and unpaid military leave and were subjected to the same policies and

practices of LAPD at issue in this case that are unlawful under USERRA.

65.    Plaintiff's claims are typical of the claims of all Subclass members in that Plaintiff: 1) took unpaid military leave; 2) were subjected to LAPD's policies and practices on sick and vacation time accruals; and 3) were deprived of proper sick and vacation time accruals.

66.    This Class Action satisfies the requirements of proceeding under Federal Rules of Civil Procedure 23(b)(3) because the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

67.    There at no other know actions pending related to the Class claims at issue in this case, and Class members have no interests in individually controlling the prosecution of separate actions.

68.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Plaintiff retained adequate counsel who have substantial experience and success in the prosecution of class actions, including USERRA class actions, and complex business litigation matters. Direct notice of this Class Action may be given to all Class members by utilizing the contact information available from LAPD's employment records.

69.    Class certification is also appropriate pursuant to Fed. R. Civ. Proc. Rule 23(b)(2) because the Company has acted on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief to Plaintiff and the Class as a whole. The Class members are entitled to injunctive relief to end the Company's practices that have caused military affiliated employees to be terminated because of their military service obligations and to be treated differently than employees without

military service obligations.

## VI.    FIRST CAUSE OF ACTION – Sick Time Accrual, Violations of 38 U.S.C. § 4301, *et seq.*

70.    Plaintiff hereby alleges and incorporates all paragraphs 1-69 above by reference herein.

71.    Employees on military leave are entitled to the same non-seniority-based benefits provided to other employees on similarly-situated, non-military related leaves of absence.  38 U.S.C. § 4316(b)(1)(B).

72.    LAPD employees taking paid military leave of thirty days or less accumulate their full amount of sick time accrual as if they were not on a military leave of absence. LAPD employees taking unpaid military leave will only have their sick time replenished if they worked one day during the previous calendar year.

73.    LAPD employees taking unpaid military leave are entitled to additional sick time because non-military employees accrue sick leave during longer periods of other types of non-military leave.

74.    Plaintiff took unpaid military leave during his employment with LAPD, accruing less sick leave than LAPD employees taking paid military leave, or non-military employees taking other types of non-military leave.

75.    LAPD's policy of requiring Plaintiff to use their regular days off to perform battle assemblies or drill weekends prevented them from taking unpaid military leave, resulting in their accrual of less sick leave than LAPD employees taking paid military leave, or non-military employees taking other types of non-military leave.

76.    Plaintiff and the Class's military service obligations were a motivating factor in LAPD's discriminatory actions.

77.    LAPD knowingly and willfully violated USERRA, among other ways, by

discriminating against Plaintiff and the Class members, and by denying them employment benefits "on the basis of" their "obligation to perform service in a uniformed service."

78.    As a direct and proximate result of the conduct of the LAPD, as set forth in this count, Plaintiff and the Class have suffered injuries and damages including but not limited to loss of past and future benefits, all to their damage in an amount to be proven at trial.

79.    Plaintiff alleges such violations of USERRA were willful and requests liquidated damages to the Class in an additional amount equal to the present value of their lost sick time benefits pursuant to Section 4323(d)(1)(C).

**VII.    SECOND CAUSE OF ACTION – Vacation Time Accrual, Violations of 38 U.S.C. § 4301, *et seq*.**

80.    Plaintiff hereby alleges and incorporates all paragraphs 1-79 above by reference herein.

81.    Employees on military leave are entitled to the same non-seniority-based benefits provided to other employees on similarly-situated, non-military related leaves of absence.  38 U.S.C. § 4316(b)(1)(B).

82.    LAPD has a regular days off ("RDO") policy wherein employees are entitled to eight regular days off during a 28-day deployment period.  Additionally, employees are entitled to thirteen days off in lieu of holidays for each year.

83.    LAPD reduces an employee's unused RDOs and/or holiday time off by one day for every three and one-quarter days an employee is absent from duty due to taking paid military leave and/or unpaid military leave.

84.    Non-military LAPD employees do not have their RDOs or holiday time reduced when taking other types of non-military leave.

85.    LAPD employees taking paid military leave of thirty days or less

accumulate their full amount of vacation time accrual as if they were not on a military leave of absence. LAPD employees taking unpaid military leave have their vacation time prorated according to the amount of time they were on unpaid military leave the previous calendar year.

86.     Plaintiff took unpaid military leave during his employment with LAPD, accruing less vacation time than LAPD employees taking paid military leave, or non-military employees taking other types of non-military leave.

87.     LAPD employees taking unpaid military leave are entitled to additional vacation time because non-military employees accrue vacation leave during periods of other types of non-military leave.

88.     Plaintiff and the Class's military service obligations were a motivating factor in LAPD's discriminatory actions.

89.     LAPD knowingly and willfully violated USERRA, among other ways, by discriminating against Plaintiff and the Class members, and by denying them employment benefits "on the basis of" their "obligation to perform service in a uniformed service."

90.     As a direct and proximate result of the conduct of LAPD as set forth in this count, Plaintiff and the Class have suffered injuries and damages including but not limited to loss of past and future benefits, with damages in an amount to be proven at trial.

91.     Plaintiff alleges such violations of USERRA were willful and request liquidated damages to the Class in an additional amount equal to the present value of their lost vacation time benefits pursuant to Section 4323(d)(1)(C).

**VIII.** **SIXTH CAUSE OF ACTION – Failure to Promote Based on Military Service Obligations, Violations of 38 U.S.C. § 4301, *et seq*.**

92.     Plaintiff hereby alleges and incorporates all paragraphs 1-91 above by

reference herein.

93.    USERRA prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. §4301(a)(3).

94.    Section 4311(a) of USERRA states in relevant part, that a person "who is a member of… performs, has performed…or has an obligation to perform service in a uniformed service shall not be denied… promotion…or any benefit of employment by an employer on the basis of that membership… performance of service, or obligation." (emphasis added).

95.    Section 4311(c) further provides, in relevant part, that "[an] employer shall be considered to have engaged in actions prohibited… if the person's membership… or obligation for service in the uniformed services is a motivating factor in the employer's action."

96.    LAPD operated under policies of discrimination as set forth above, which resulted in a general policy and practice of discrimination by denying promotions to its employees due to their taking leave to perform military duty in violation of USERRA.

97.    Plaintiff was denied promotion following military leaves of absence. Plaintiff' and the Class's protected status as members of the military was a motivating factor in LAPD's denial of benefits, conditions, and privileges of Plaintiff' employment, to include denying promotions to higher ranks in the LAPD without good cause, and as a result of their military responsibilities.

98.    LAPD knowingly and willfully violated USERRA, among other ways, by discriminating against Plaintiff, and by denying him promotion and employment benefits "on the basis of" his "obligation to perform service in a uniformed service."

99.    As a direct and proximate result of the conduct of LAPD as set forth in this count, Plaintiff has suffered injuries and damages including but not limited to loss of

past and future benefits, with damages in an amount to be proven at trial.

100.   Plaintiff allege such violations of USERRA were willful and request liquidated damages in an additional amount equal to the amount of lost wages and future earnings related to denied promotions, to be proven at trial.

101.   USERRA prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. §4301(a)(3).

102.   Section 4311(a) of USERRA states in relevant part, that a person "who is a member of… performs, has performed…or has an obligation to perform service in a uniformed service shall not be denied… promotion…or any benefit of employment by an employer on the basis of that membership… performance of service, or obligation." (emphasis added).

103.   Section 4311(c) further provides, in relevant part, that "[an] employer shall be considered to have engaged in actions prohibited… if the person's membership… or obligation for service in the uniformed services is a motivating factor in the employer's action."

104.   "Benefit" is defined as:
> The term 'benefit', 'benefit of employment', or 'rights and benefits' means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment."

38 U.S.C. §4303(2).

105.   A "benefit of employment" includes the right to select work hours or the

location of employment. 20 C.F.R. §1002. 5(b).

106.  In the Department of Labor's Fiscal Year 2010 report to Congress (published in July 2011), the department clarified its interpretation that a "benefit of employment" included freedom from workplace harassment and/or a hostile work environment:

> The Department of Labor considers it a violation of USERRA for an employer to cause or permit workplace harassment, the creation of a hostile working environment, or to fail to take prompt and effective action to correct harassing conduct because of an individual's membership in the uniformed service or uniformed service obligations.

Department of Labor (USERRA) Fiscal Year 2010 Report to Congress.

107.  USERRA's definition of "service in the uniformed services" covers all categories of military training and service, including duty performed on a voluntary or involuntary basis, in time of peace or war. 38 U.S.C. §4312(e)(1)(A)(i); 20 C.F.R. §1002.115. (emphasis added).

108.  Section 4312 of USERRA provides:

> [A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter…

38 U.S.C. §4312(a).

109.  Section 4313 of USERRA (further codified by 20 C.F.R. § 1002.191) provides that an employee is entitled to be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service.

110.  Section 4316 of USERRA provides that any period of absence from employment due to or necessitated by uniformed service is not considered a break in

employment, so an employee absent due to military duty must be treated as though they were continuously employed.

111.   Section 4316 further provides that a person who is reemployed "is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed."

112.   "The employer must determine the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service." 20 C.F.R. §1002.193.

113.   USERRA expressly supersedes any state or local law, agreement, and/or employer policy. 38 U.S.C. § 4302(b); 20 C.F.R. § 1002.7(b).

114.   An employee need not request time off or permission to perform military service obligations. The employee must give notice to the employer, such notice may be verbal or written, and need not follow any particular format. 20 C.F.R. §§ 1002.87; 1002.85(b).

115.   An employee need not provide documentation prior to performing periods of military service obligations, only upon reemployment after periods of service of more than thirty days. 20 C.F.R. §§ 1002.121; 1002.122; 1002.123.

116.   USERRA provides at a minimum, an employee must have enough time after leaving the employment position to travel safely to the uniformed service site and arrive fit to perform the service. "If the employee performs a full overnight shift for the civilian employer and travels directly from the work site to perform a full day of uniformed service, the employee would not be considered fit to perform the uniformed service. An absence from that work shift is necessitated so that the employee can report

for uniformed service fit for duty." 20 C.F.R. § 1002.74(a).

117.    An employee may use any paid time off ("PTO") during his or her period of military leave, but an employer may not require the employee to use accrued vacation, annual, or similar leave during a period of service in the uniformed services. 38 U.S.C. § 4316(d); 20 C.F.R. §1002.153.

118.    Plaintiff's protected status as members of the military was a motivating factor in LAPD's denial of benefits, conditions, and privileges of Plaintiff' employment, to include denying promotions to higher ranks in the LAPD without good cause, and as a result of their military responsibilities.

119.    One of the benefits of employment available to the Plaintiff and the Class is the right to retention in employment while performing their military service obligations, and to be provided the same seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service.

120.    LAPD's policy and practice of denying promotions to its employees due to their taking leave to perform military duty violates USERRA.

121.    LAPD's policy of denying training opportunities to its employees due to their taking leave to perform military duty violates USERRA.

122.    Plaintiff and the Class's military service obligations were motivating factors in LAPD's discriminatory actions.

123.    LAPD knowingly and willfully violated USERRA, including but not limited to Section 4311, 4312, 4313 and 4316, among other ways, by discriminating against Plaintiff and the Class members, and by denying them employment benefits "on the basis of" their "obligation to perform service in a uniformed service."

124.    As a direct and proximate result of the conduct of LAPD, as set forth in this count, Plaintiff and the Class have suffered injuries and damages including but not

limited to loss of past and future benefits, all to their damage in an amount to be proven at trial.

125.    Plaintiff alleges such violations of USERRA were willful and request liquidated damages to the Class in an additional amount equal to the present value of their lost wages and other benefits pursuant to Section 4323(d)(1)(C).

## JURY DEMAND

126.    Pursuant to Federal Rule of Civil Procedure 38 or any similar rule or law, Plaintiff demands a trial by jury for all causes of action and issues for which trial by jury is available.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Plaintiff prays for relief against Defendants, and each of them, as follows:

1.    Determine that this action may proceed and be maintained as a class action, designating Plaintiff as Lead Plaintiff, and certifying Plaintiff as the Class representatives under Rule 23 of the Federal Rules of Civil Procedure and their counsel of record as Class Counsel;

2.    Declare that the acts and practices complained of herein are unlawful and are in violation of USERRA;

3.    Require that LAPD and COLA fully comply with the provisions of USERRA by providing Plaintiff and Class Members all employment benefits denied them as a result of LAPD and COLA's unlawful acts and practices described herein;

4.    Enjoin LAPD and COLA from taking any action against Plaintiff and members of the Class that fail to comply with the provisions of USERRA;

5.    Award fees and expenses, including attorneys' fees pursuant to 38 U.S.C. §4323(h);

6.      Award Plaintiff and the Class prejudgment interest on the amount of lost wages or employment benefits due;

7.      Order that LAPD and COLA pay compensatory and/or liquidated damages in an amount equal to the amount of lost compensation and other benefits suffered due to its willful violations of USERRA;

8.      Grant an award for costs of suit incurred; and

9.      Grant such other and further relief as may be just and proper and which Plaintiff and the Class may be entitled to under all applicable laws.

DATED: October 15, 2024

*/s/ Brian J. Lawler*
Brian J. Lawler

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2024, I electronically filed the above with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s Brian J. Lawler*
Brian J. Lawler